FILED
CHARLOTTE, NC

FEB 17 2021

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 3:21cr46-FDW |
| ) | |
| v. ) | **BILL OF INDICTMENT** |
| ) | |
| JASMINE JOHNNAE CLIFTON ) | 18 U.S.C. § 1343 |
| ) | 18 U.S.C. § 1040 |
| ) | |

THE GRAND JURY CHARGES:

At all times material to this Indictment:

### Introduction

1. Defendant Jasmine Johnnae Clifton ("CLIFTON") submitted and caused to be submitted a fraudulent loan application to the United States Small Business Administration ("SBA") for Jazzy Jas LLC, a company that was dissolved at the time of the loan application. As a result of the fraudulent application, which included false information about revenues and a fraudulent tax document, CLIFTON obtained $149,900 in disaster relief funds that were intended to be provided to an existing business harmed by the COVID-19 pandemic.

### Jazzy Jas LLC

2. In 2019, CLIFTON created Jazzy Jas, an online retail clothing sales business. As a legal entity, Jazzy Jas LLC existed in North Carolina for approximately eight months.

3. On or about February 1, 2019, CLIFTON filed Articles of Organization with the North Carolina Secretary of State to form a limited liability company (LLC) named Clifton Holdings LLC. In the organization articles, CLIFTON was listed as the only member of the LLC and the address for the business was the same as CLIFTON's home address. On or about April 1, 2019, CLIFTON officially filed papers to amend the Articles of Organization for Clifton Holdings LLC and changed its name to Jazzy Jas LLC. On or about January 24, 2020, CLIFTON signed a document to dissolve Jazzy Jas LLC. The Articles of Dissolution were filed with the North Carolina Secretary of State on March 5, 2020, with a retroactive effective date of September 30, 2019.

1

## The CARES Act and EIDL Loans

4. The SBA is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

5. On March 13, 2020, President Donald J. Trump declared an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act in response to coronavirus disease 2019 (COVID-19). On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for the expansion of others, including programs created and/or administered by the SBA, to administer the emergency relief.

6. One of the programs expanded by the CARES Act was the Economic Injury Disaster Loan ("EIDL") program, which is a SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

7. EIDL proceeds may only be used for working capital to alleviate economic injury caused by the disaster (related to the COVID-19 pandemic) occurring in the month of January 31, 2020 and continuing thereafter.

8. EIDL funds are issued directly from the United States Treasury, and an applicant applies through the SBA via an online portal. In the electronic application, the applicant certifies that all of the information in the application is true and correct to the best of the applicant's knowledge and is warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties. The application also states that the SBA relies upon the self-certifications in the EIDL application in determining whether the applicant is eligible for an EIDL.

9. The EIDL application process collects information concerning the business and the business owner, including information regarding the business's gross revenue for the 12-month period preceding the disaster, which, for COVID-19, is defined as January 31, 2020; the cost of goods sold for the 12-month period preceding the disaster; the number of employees employed by the business at the time of the disaster; information as to the criminal history of the business owner; and information regarding anyone that assisted in the preparation of the application.

## The Scheme to Defraud

10. CLIFTON devised a scheme and artifice to defraud the United States, specifically the SBA, by: (1) preparing and causing to be prepared false and fraudulent EIDL loan documents, including an application and other forms; (2) submitting and causing to be submitted the false and fraudulent loan application to the SBA in order to obtain funds through the EIDL program; and (3) receiving and obtaining payments and benefits based on the fraudulent loan application.

## Manner and Means of the Scheme to Defraud

11. The manner and means by which CLIFTON sought to accomplish the objects and purpose of the scheme and artifice included, among others:

12. On or about July 24, 2020, CLIFTON electronically submitted and caused to be submitted an application for an EIDL in the name of Jazzy Jas LLC to the SBA ("EIDL Application -8460").

13. Within EIDL Application -8460, CLIFTON falsely affirmed the following information to the SBA:
    a. that Jazzy Jas LLC was to be the recipient of the loan; and
    b. that Jazzy Jas LLC had $350,000 in gross revenues for the 12 months prior to the disaster.

14. In addition, within the EIDL Application -8460, CLIFTON provided a fraudulent Schedule C tax form to the SBA as a supplement document.

15. On or about August 8, 2020, CLIFTON electronically signed the Loan Authorization and Agreement in connection with SBA Loan -8204 for Jazzy Jas LLC. In the loan agreement, CLIFTON certified that all of the representations in EIDL Application -8460 were true, correct and complete and were offered to induce SBA to make the loan. CLIFTON specifically agreed to use the loan proceeds for Jazzy Jas LLC "solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020."

16. In fact, Jazzy Jas LLC no longer existed at the time of CLIFTON's loan application and agreement. CLIFTON nonetheless used the prior existence of Jazzy Jas LLC as a means to exploit a federal loan program and obtain a substantial cash sum.

17. On or about August 8, 2020, EIDL Application -8460 was approved for an EIDL in the amount of $150,000.00, less a $100.00 fee ("SBA Loan -8204").

18. On or about August 11, 2020, in connection with SBA Loan -8204, EIDL funds totaling $149,900.00 were deposited into CLIFTON's State Employee Credit Union (SECU) account.

19. After the fraudulent loan proceeds were deposited into CLIFTON's SECU bank account, CLIFTON diverted and caused to be diverted the fraudulently-obtained funds for personal and unauthorized purposes, including purchases at Nike, Dillards, Nordstrom, IKEA, Best Buy, Mattress Firm, Rooms To Go, Lowes, Kirklands, Ross, Foot Locker, Target, Walmart, Guitar Center, LS Biggs Camera, Best Buy, Amazon, Lyft rideshare, Saks New York, Neiman Marcus, Diamond Castle New York, American Airlines, HomeGoods, Diamonds by David, Progressive Insurance, Embassy Suites, Dirty South Customs, Liberty Buick GMC, Louis Vuitton, and various other retail shopping outlets.

## COUNT ONE
(Wire Fraud in Relation to a Disaster Benefit)

20. Paragraphs 1 through 19 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

21. From on or about July 24, 2020 through on or about November 24, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**JASMINE JOHNNAE CLIFTON,**

with the intent to defraud, did knowingly and intentionally devise the above-described scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communication in interstate commerce any writing, signal, picture, and sound, *to wit*: an electronic loan application and supporting documents, a signed loan agreement, wire transfers, and other electronic financial transactions in interstate commerce.

22. The above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises, occurred in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially-declared major disaster or emergency.

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO
(Fraud in Connection with Major Disaster or Emergency Benefits)

23. Paragraphs 1 through 19 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

24. From on or about July 24, 2020 through on or about August 8, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**JASMINE JOHNNAE CLIFTON,**

did knowingly make a materially false and fraudulent statement and representation, in an EIDL loan application, in connection with a benefit provided by the United States, which was authorized and paid in connection with a major emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, and was a payment, money, and thing of value of the United States, and any department and agency thereof.

All in violation of Title 18, United States Code, Sections 1040(a)(2).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

   a.  All property which constitutes or is derived from proceeds of the violations set forth in Counts One and Two of this Bill of Indictment;

   b.  If, as set forth in 21 U.S.C. § 853(p), any property described in (a) and (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above:

   a.  A forfeiture money judgment in the amount of at least $149,900, such amount constituting the proceeds of the violations set forth in Counts One and Two of this Bill of Indictment; and

   b.  Approximately $50,415.84 in funds seized on or about November 24, 2020, pursuant to a federal Seizure Warrant, from State Employees' Credit Union Account XXXX5645, such account held in the name of Jasmine Clifton.

A TRUE BILL:

R. ANDREW MURRAY
UNITED STATES ATTORNEY

*[signature]*

WILLIAM T. BOZIN
ASSISTANT UNITED STATES ATTORNEY