UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:21-cr-0046 |
| | ) | |
| | ) | **GOVERNMENT'S SENTENCING** |
| v. | ) | **MEMORANDUM** |
| | ) | |
| JASMINE JOHNNAE CLIFTON | ) | |
| | ) | |

COMES NOW the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and respectfully submits this Sentencing Memorandum.

### I. Introduction

Defendant Jasmine Clifton took advantage of the COVID-19 pandemic by fraudulently obtaining a an Economic Injury Disaster Loan (EIDL) from the Small Business Administration (SBA) for Jazzy Jas, LLC, a company that was dissolved at the time of the loan application. As a result of her fraudulent application, the defendant obtained $149,900 in disaster relief funds that were intended to be provided to an existing business harmed by the COVID-19 pandemic.

On March 6, 2020, lawmakers enacted the Coronavirus Preparedness and Response Supplemental Appropriations Act, Pub. L. No. 116-123. The act provided $8.3 billion in emergency funding for federal agencies to respond to the coronavirus outbreak, including $20 million to the SBA to administer its disaster loan program. The act also deemed the COVID-19 outbreak a Small Business Administrator-declarable disaster for purposes of § 7(b)(2)(D) of the Small Business Act, thereby making economic injuries sustained as part of the pandemic an eligible expense for the SBA's EIDLs. Pub. L. No. 116-123, Title III.[1] At that time, the SBA had about $1.1 billion in its disaster loan credit subsidy account to support about $7 billion in EIDLs. The SBA subsequently issued disaster declarations for all 50 states that made EIDLs available to small businesses affected by the pandemic. 85 Fed. Reg. 19052-53 (April 3, 2020).

On March 27, 2020, Congress enacted the CARES Act, Pub. L. No., 116-136, to provide federal relief to those affected by the pandemic. Among other relief, the CARES Act created and allocated $349 billion to the Paycheck Protection Program, which was designed to provide small businesses with loans in order to keep employees on the payroll. The CARES Act also provided the SBA with an additional $562 million for EIDLs and $10 billion for emergency grants to businesses applying for EIDLs.

---

[1] The Small Business Act empowers the SBA to make disaster loans if the SBA determines that a small business has suffered a substantial economic injury as a result of a major disaster as determined by the President under the Stafford Act, a natural disaster determined by the Secretary of Agriculture, a disaster as determined by the SBA, an emergency involving Federal primary responsibility, or in response to a Governor's request. 15 U.S.C. § 636(b)(2)(D).

1

## II. Sentencing Guidelines

A. <u>Advisory Guidelines Calculation</u>

As calculated in the PSR, the defendant faces an offense level calculation as follows:

| | |
|---|---|
| Base Offense Level [U.S.S.G.§ 2B1.1(a)(1)]: | 7 |
| Loss between $95,000 and $150,000 [U.S.S.G. §2B1.1(b)(1)(E)] | +8 |
| The offense involved conduct described in 18 U.S.C. § 1040 [U.S.S.G. §2B1.1(b)(12]: | +2 |
| TOTAL | 17 |
| Less 3 levels for timely acceptance of responsibility | -3 |
| OFFENSE LEVEL | 14 |

Based on an offense level 14/I, the advisory sentencing guidelines range called for by the PSR, absent any variances or departures, is 15-21 months.

B. <u>Government Objection to the Enhancement Under U.S.S.G. §2B1.1(b)(12)</u>

The United States Probation Office (USPO) included a two-level enhancement pursuant to U.S.S.G §2Bl.l(b)(l2) in the draft Presentence Investigation Report (PSR). The United States filed an objection when this enhancement was included in the draft PSR. Ultimately, the USPO did not recommend a change to the final PSR, which included the two-level enhancement.

Generally, the two-level enhancement is applicable when "the offense involved conduct described in 18 U.S.C. § 1040." U.S.S.G. §2B1.1(b)(12). Section 1040 involves fraud in connection with a major disaster or emergency benefits. On its face, this enhancement appears applicable to fraud related to COVID-19 funds, like those involved in the conduct in this case.

However, a more in-depth review of this statute and the enhancement shows that the fraud must be in a matter paid in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5170) or an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5191).

On March 13, 2020, then President Donald Trump declared the existence of a national emergency pursuant to § 501(b) (42 U.S.C. § 5191(b)) of the Stafford Act in response to the COVID-19 pandemic. However, the EIDL program funds – such as those involved in this case – were not issued under the Stafford Act, but rather through other federal disaster declarations

2

(referenced above).[2] While a Presidential declaration may also provide the basis for the payment of EIDLs under the Small Business Act, *see* 15 U.S.C. § 636(b)(2), a Presidential declaration was not necessary in connection with the pandemic due to the legislation signed on March 6, 2020, and the subsequent Presidential declaration of a national emergency on March 13, 2020 made no reference to SBA disaster loans.

In April 2021, the Department of Justice issued guidance to AUSAs prosecuting COVID-19 fraud cases directing that AUSAs should "use restraint" in seeking this two-level sentencing enhancement because the conduct does not involve funds obtained under the Stafford Act.

### C. Government Request for a Two-Level Upward Variance

If the Court grants the Government's above objection, the Government will respectfully move for a two-level upward variance, which would result in the same sentencing guidelines range as called for in the final PSR.

While there may not be clarity on whether the enhancement pursuant to U.S.S.G. §2B1.1(b)(12) would be applicable to funds that were not obtained through the Stafford Act, there is clarity that: (1) COVID-19 had not been contemplated at the time of the drafting of the Sentencing Guidelines and (2) COVID-19 payments were paid in connection with a major disaster and national emergency.

The same reasoning that made a two-level sentencing enhancement appropriate to funds sought by those defrauding relief funds for victims of Hurricane Katrina and Hurricane Rita, as contemplated by U.S.S.G. §2B1.1(b)(12), makes an enhanced punishment appropriate in this case.

Even if the enhancement in the guidelines may not technically apply to the conduct here, the reasoning behind such an enhancement – to punish defendants who seek to profit from national disasters and who take advantage of the government's desire to get money quickly into the hands of those hurt by the disasters – still applies.

The Government, thus, respectfully moves for a two-level upward variance. The defendant's conduct involved applying for economic disaster loans based on the COVID-19 pandemic. If the Government's above objection is sustained, a two-level variance will result in an adjusted offense level of 14/I with an advisory guidelines range of 15-21 months in prison.

## III. U.S.S.G. 3553(a) Factors

---

[2] The disaster declarations that triggered the SBA's payment of EIDLs were those of the Small Business Administrator in light of Congress making economic injury related to the pandemic eligible for such loans as part of the Coronavirus Preparedness and Response Supplemental Appropriations Act signed on March 6, 2020. 85 Fed. Reg. 19052-53 (April 3, 2020).

A. Nature and Circumstances of Offense

Jazzy Jas LLC was an online retail clothing store created by the defendant in April 2019.[3] The limited liability company's existence was short-lived as the defendant signed a document to dissolve Jazzy Jas LLC in January 2020. The Articles of Dissolution were filed with the North Carolina Secretary of State on March 5, 2020, with a retroactive effective date of September 30, 2019.

On or about July 24, 2020, the defendant electronically submitted an application for an EIDL in the name of Jazzy Jas LLC to the SBA despite the fact that the defendant had filed documents to dissolve the company approximately six months prior. Within the EIDL Application, the defendant falsely affirmed the following information to the SBA: (1) that Jazzy Jas LLC was to be the recipient of the loan; and (2) that Jazzy Jas LLC had $350,000 in gross revenues for the 12 months prior to the disaster. In fact, Jazzy Jas LLC no longer existed at the time of the defendant's loan application and agreement.[4] The defendant nonetheless used the prior existence of Jazzy Jas LLC to exploit a federal loan program and obtain a substantial loan.

On August 11, 2020, $149,900 was deposited into the defendant's State Employee's Credit Union (SECU) bank account; at the time, the balance on the account was $123.69. After the fraudulent loan proceeds were deposited into the defendant's SECU bank account, the defendant made $104,236.40 in expenditures over the next four months, many of which appear to be personal in nature.[5]

The defendant's extravagant expenditures over this four-month timespan, which were almost entirely funded by the fraudulent EIDL loan, included[6]:

- $17,176 in CashApp payments
    - Including payments to individuals with usernames: Q Vision, April, Jess, Jordan, Kayla, Kimberly, Mohammed, and Natasha
- $8,213 at musical instrument retailers
    - Including purchases at the Sweetwater Sound and Guitar Center stores
- $7,377 at luxury retail stores
    - Including purchases at Louis Vuitton in Charlotte; Saks Fifth Avenue in New York; Nieman Marcus in North Carolina; and Nordstrom in Charlotte
- $6,347 at electronics stores

---

[3] In an interview with federal agents on December 2, 2020, the defendant explained that the business involved her purchasing clothing wholesale at the www.fashionista.com website and reselling the clothing at her website www.jazzyjas.com. The defendant also mentioned travelling to Los Angeles to purchase clothing for resale.

[4] In the December 2020 interview, the defendant said that she dissolved Jazzy Jas LLC because sales were "so slow" that it was not worth "putting on paper." She also said that she was using the EIDL loan funds to pay off debt for Jazzy Jas and fund a new business venture, Q Vision, focusing on photography and music videos. An EIDL loan application for Q Vision was denied in August 2020.

[5] During this time, approximately $4,631.33 were deposited into the defendant's SECU account, separate from the fraudulent EIDL loan funds.

[6] The expenditure figures are approximate and include credit card purchases made by the defendant on credit cards paid for with the fraudulent EIDL loan funds.

- o Including purchases at Biggs Camera in Charlotte; and Best Buy in North Carolina
- $5,967 at auto parts stores
  - o Including purchases at Dirty South Customs in Charlotte
- $5,563 at furniture stores
  - o Including purchases at Rooms To Go, IKEA, and Mattress Firm stores in Charlotte
- $5,378 in cash
  - o Including ATM withdrawals in New York City and North Carolina
- $3,156 for property payments
  - o Including for rent and mortgage payments
- $2,860 at diamond and jewelry stores
  - o Including purchases at Diamond Castle in New York City, Diamonds by David in Pineville, North Carolina; and Kay Jewelers in Charlotte
- $2,743 at shoe stores
  - o Including purchases at Sneaker Den in New York City; Nike in New York City; Puma in New York City; and Foot Locker in North Carolina
- $2,612 at other retail stores
  - o Including purchases at Dillards, Target, and WalMart in Charlotte
- $1,690 at hotels
  - o Including payments to Embassy Suites in Charlotte and New York City; and the Four Seasons Hotel in Atlanta

The defendant's purchases are troubling given the background of this case and the fact that the loan was granted for the national emergency caused by COVID-19. On November 25, 2020, approximately $50,415.84 in remaining loan proceeds were seized by the United States.

B. Additional 3553(a) Factors

To her credit, the defendant is a college graduate who had no criminal history before the instant offense. Nonetheless, this is a serious crime in which the defendant fraudulently obtained taxpayer dollars from the federal government that were supposed to be used to alleviate the harms that a global pandemic inflicted on businesses. This Court should fashion a sentence that considers the seriousness of the offense as well as specific and general deterrence. In particular, the sentence in this case must deter others who may be tempted by an "easy money" fraud scheme and should also specifically deter the defendant and others from committing further fraud to fund a lavish spending spree.

### IV. Conclusion

The defendant fraudulently obtained funds that were meant to help businesses suffering due to the COVID-19 pandemic. In so doing, the defendant took advantage of benefits that the Government was trying to distribute quickly due to a national emergency.

The Government respectfully requests that the Court sentence the defendant to a term consistent with the range in the Sentencing Guidelines for 14/I – 15-21 months – a range that includes an upward variance of two-levels because of her fraud involving disaster benefits. In

this case, the Government believes a sentence within this guideline range is sufficient but not greater than necessary to achieve the sentencing objectives under 18 U.S.C. 3553(a).

Respectfully submitted this the 25th day of March, 2022 by:

DENA J. KING
UNITED STATES ATTORNEY

**s/ William T. Bozin**
Assistant United States Attorney
Bar: State of State of North Carolina
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (office)
William.bozin@usdoj.gov